UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEDA HOVHANNISYAN,<br><br>            Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>            Defendant. | CASE NO. CV 17-2743 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Seda Hovhannisyan ("Plaintiff") seeks review of the final decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for social security benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 12, 13). For the reasons stated below, the decision of the Commissioner is REVERSED and this case

is REMANDED for further administrative proceedings consistent with this decision.

## II.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-

Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 30, 2013, the application date. (AR 20). At step two, the ALJ found that Plaintiff's headaches, hypertension, degenerative changes in the lumbar and thoracic spine, pituitary macroadenoma, status post removal surgery and obesity are severe impairments. (AR 20). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 21-22).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform a full range of medium work, as defined in 20 C.F.R.

§ 416.967(c).[1] (AR 22). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 26-27). Utilizing the grids and considering Plaintiff's age, education, work experience and RFC, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 27). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act since January 30, 2013, the date the application was filed. (AR 27-28).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

5

evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

**A.  The ALJ Failed To Properly Weigh The Treating Physician's Opinion**

An ALJ must afford the greatest weight to the opinion of the claimant's treating physician. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).

6

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. at 830-31; see Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record," the ALJ shall consider "specified factors in determining the weight it will be given[, including] . . . the length of the treatment relationship and the frequency of examination by the treating physician[ ] and the nature and extent of the treatment relationship between the patient and the treating physician." Orn, 495 F.3d at 631 (citation omitted); see 20 C.F.R. §§ 404.1527(d)(2) (listing factors to consider), 416.927(d)(2) (same).

On June 10, 2015, Vagharshak M. Pillosyan, M.D., Plaintiff's treating physician, completed a physical RFC questionnaire. (AR 307-10). He opined that Plaintiff was limited to lifting or carrying less than ten pounds frequently and ten pounds occasionally, walking and standing less than two hours in an eight-hour workday with occasional use of a walker, and sitting less than one hour in an eight-hour day. (AR 308). Dr. Pillosyan further opined that Plaintiff can occasionally balance but never perform other postural activities, occasionally reach, handle and finger because of numbness of the fingers bilaterally, and is visually limited due to loss of half the right visual field. (AR 309). Finally, Dr. Pillosyan opined that Plaintiff has an inability to

tolerate noise, dust, vibration, extreme humidity and dryness, odors, claustrophobia and heights. (AR 309).

The ALJ gave Dr. Pillosyan's opinion "little weight," finding it "unsupported by and inconsistent with [Plaintiff's] objective medical findings and her testimony." (AR 26). The ALJ also rejected Dr. Pillosyan's opinion because "he did not make such limited findings until June 2015, suggesting [Plaintiff's] application for disability benefits and approaching hearing date prompted his opinion." (AR 26). The ALJ's analysis is not supported by substantial evidence.

First, the ALJ's discussion of the treating doctor's opinions fails to provide sufficient analysis. The ALJ's analysis lacks sufficiently specific reasoning to allow a reviewing court to conclude that the ALJ rejected the treating physician's opinion for legitimate reasons supported by substantial evidence. Furthermore, the ALJ does not explain how Dr. Pillosyan's opinion is inconsistent with Plaintiff's testimony.

Second, the ALJ's discussion of the medical evidence overlooks important points. The ALJ contends that Dr. Pillosyan's records do not show any limitation in reaching and fingering. (AR 26). To the contrary, on January 3, 2014, Dr. Pillosyan found Plaintiff positive for numbness of the extremities mainly distally and positive for painful shoulders, elbows, wrists, hands and fingers. (AR 299-300). These findings persisted during subsequent examinations in January, February and May 2014 and into 2015. (AR

297, 298, 295, 291, 292, 288, 289). The ALJ also asserts that Dr. Pillosyan's records do not indicate any visual limitations. (AR 26). However, on January 3, 2014, Dr. Pillosyan diagnosed mild ptosis and cataract of right eye. (AR 300). On January 6, 2014, Dr. Pillosyan confirmed decreased vision in Plaintiff's right eye. (AR 297). On May 28, 2014, Plaintiff reported blurry vision and an inability to see the upper outer quadrate of the right visual field, which continued into 2015. (AR 291, 289, 286, 283). On January 21, 2015, Dr. Pillosyan diagnosed progressive right eye blindness. (AR 290). On May 8, 2015, Dr. Pillosyan found right sided visual field defect, laterally. (AR 281). These findings contradict the statement regarding a lack of visual limitations.

Further, Dr. Pillosyan performed multiple examinations that supported the physical limitations described in his June 2015 opinion. In January and February 2014, Plaintiff had joint and muscle pain and stiffness, limited range of motion in her shoulders and neck and limited strength in all extremities. (AR 294-300). In May 2014, Plaintiff reported severe, excruciating back and shoulder pain with reduced range of motion. (AR 291). In January and March 2015, Plaintiff used a cane to ambulate and reported an unstable gait with occasional falls. (AR 286, 289). On examination, Dr. Pillosyan found mild kyphosis, moderate to severe tenderness to palpation of spinous processes, muscle spasms in the upper back, decreased strength in lower extremities, weakness in upper extremities, tenderness to palpation and reduced range of motion of the right shoulder, tenderness and selling of the right AC joint, increased pain upon supination of the right forearm,

9

severe tenderness of the lumbar/sacral region with muscular spasm and significant reduced range of motion, and an unstable gait with the fear of falling secondary to pain and weakness of the lower extremities. (AR 286-87, 289-90). In May 2015, Plaintiff reported edema of both legs with palpitations. (AR 280). On examination, Dr. Pillosyan found a mildly stiff neck, edema and tenderness of both legs, decreased muscle strength, unstable gait, decreased sensation to pain and touch on a distribution of the L4-L5 nerve and over the posterolateral aspect of the right leg, and kyphosis of the thoracic spine. (AR 281).

Third, the ALJ erred in rejecting Dr. Pillosyan's opinion in favor of the nontreating, State Agency physicians' opinions. The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a nontreating physician's contradictory opinion. Orn, 495 F.3d at 632; Lester, 81 F.3d at 830-31. The State Agency physicians opined that Plaintiff was capable of lifting or carrying fifty pounds occasionally and twenty-five pounds frequently; standing, walking and sitting six hours in an eight-hour workday; and performing postural activities frequently. (AR 59-68, 70-79). The ALJ gave "considerable weight" to the State Agency determinations because "they are overall consistent with and supported by the substantial medical evidence of record and [Plaintiff's] activities of daily living." (AR 26). The ALJ does not, however, identify what "substantial medical evidence of record" or "activities of daily living" indicate that Plaintiff is capable of medium work. Further, the State Agency physicians submitted their opinions in June and December 2013 and

did not have the opportunity to review substantial medical evidence submitted after those dates. Not only did they not have the opportunity to review Dr. Pillosyan's medical records, including his examinations, but they also were unaware that Plaintiff was diagnosed with a pituitary tumor in January 2014 and that June 2014 and June 2015 x-rays indicated chronic, degenerative changes along the lumbar, thoracic and cervical spine. (AR 247-58, 269-79, 311-14).

Finally, the ALJ's contention that Dr. Pillosyan's opinion was prompted by Plaintiff's disability application (AR 26) is legally insufficient. In Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996), as amended (Aug. 12, 1996), the Ninth Circuit ruled that the ALJ could reject a physician's statement where "it was obtained solely for the purposes of the administrative hearing, varied from [that physician's] own treatment notes, and was worded ambiguously." Here, however, Dr. Pillosyan's opinion was not ambiguous and, as discussed above, was consistent with his treatment notes.

In sum, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Pillosyan's opinion. On remand, the ALJ shall reevaluate Dr. Pillosyan's opinion. If the ALJ finds appropriate reasons for not giving the opinion controlling weight, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.

**B.   The ALJ's Use Of The Grids Was Improper**

The ALJ relied on the medical vocational grids to determine that there were jobs in the national economy that Plaintiff is capable of performing. (AR 27). However, "[i]f a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny, 2 F.3d at 958. Thus, "the grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and alterations omitted).

Here, Plaintiff's nonexertional limitations are sufficiently severe such that they limit her abilities in ways not contemplated by the grids. As discussed above, the record reveals sufficient nonexertional impairments (pain and reduced vision) that precluded the ALJ's sole reliance on the grids. Tackett, 180 F.3d at 1101-02 (ruling that significant nonexertional impairments, such as poor vision, pain and inability to tolerate dust or gases, may make reliance on the grids inappropriate). Because the grids do not accurately and completely represent Plaintiff's limitations, the ALJ improperly relied on them when he determined that Plaintiff was "not disabled" at step-five of the sequential evaluation process. Plaintiff suffers from sufficiently severe nonexertional limitations, including pain and poor vision, to make the grids

inapplicable to the present case. Therefore, on remand, the ALJ must hear testimony from a vocational expert to determine whether Plaintiff is disabled under the Social Security Act.[2]

**VI.**

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 27, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**

---

[2] Plaintiff also argues that the ALJ failed to consider her headaches and obesity on her ability to work and erred in rejecting her subjective symptoms. (Dkt. No. 19 at 9-16). However, it is unnecessary to reach Plaintiff's arguments on these grounds, as the matter is remanded for the alternative reasons discussed at length in this Order.

13